T. F. DALRYMPLE v. E. ISADORE SINKOE, Trading as CHARLOTTE SALVAGE COMPANY.

(Filed 25 May, 1949.)

**1. Sales § 30—**

> Where the seller represents that the article sold is suitable for a particular use when in fact it is eminently dangerous when so used, the seller is liable for injury resulting from such use to the same extent as if he had sold the article knowing it to be dangerously defective.

**2. Same—**

Plaintiff's evidence tended to show that defendant sold him a gas heater upon representations that such heater was constructed and equipped to burn liquid gas, wherein in fact it was designed only for the burning of natural or manufactured gas and was eminently dangerous when used to burn liquid gas, and that plaintiff was injured in an explosion when he struck a match in the room in which the heater was installed. There was evidence that plaintiff's other gas burners, which were designed to burn liquid gas, were functioning properly on the day in question. *Held:* The evidence was sufficient to be submitted to the jury on the issue of negligence, and it was error to grant defendant's motion to nonsuit.

**3. Same—**

The seller represented that the heater sold was equipped and designed for use with a particular fuel when in fact it was eminently dangerous when used in connection with such fuel. A metal label on the heater giving model, serial number, etc., contained a warning in small letters that the heater was not to be used with the type of fuel employed by the buyer. *Held:* The contributory negligence of the buyer in using the heater in connection with his type of fuel is a question for the jury, and nonsuit was improper.

**4. Negligence § 19c—**

Plaintiff will not be held guilty of contributory negligence as a matter of law unless plaintiff's own evidence so clearly establishes this defense that no other reasonable inference may be drawn therefrom.

APPEAL by plaintiff from *Coggin, Special Judge,* at November Term, 1948, of MECKLENBURG.

This is an action instituted by the plaintiff against the defendant to recover damages for injuries, alleged to have been sustained from an explosion of gas from a water heater which the plaintiff purchased from the defendant.

The plaintiff operated a filling station and cafe in Rockingham, N. C. He was burning liquid gas, purchased from Thomas Liquid Gas Company, High Point, N. C., in a stove, a steam table and coffee urn in his cafe. This gas was purchased in a drum and poured into a tank in the ground. A compressor motor was used to pump air into the tank, and as the liquid gas mixed with the air it vaporized and generated a gas which flowed into the burners.

On 9 February, 1946, the plaintiff testified, he went to the Charlotte Salvage Company, in Charlotte, N. C., the place of business of the defendant E. Isadore Sinkoe, for the purpose of purchasing a water heater. He asked Mr. Sinkoe if he had gas water heaters for use with liquid gas. Mr. Sinkoe informed him he did and showed the plaintiff some water heaters which were still in their crates. He then told Mr. Sinkoe he wanted one that used Thomas' liquid gas, from High Point, N. C.; and

that Mr. Sinkoe replied "That is what you want, we furnish them heaters." The plaintiff purchased one of the heaters.

According to the evidence, the heater was received by the plaintiff on the 1st or 2nd of March, 1946, and installed by him in the shower room of his service station. The heater was used from the 1st or 2nd of March until 6 March. About 8:15 p.m., on 6 March, 1946, the plaintiff sat down in the shower room to smoke a cigarette; when he struck a match to light the cigarette, there was a terrific explosion. He was seriously and permanently injured. The gas appliances in the cafe were working properly on the day of the explosion.

After the plaintiff returned from the hospital, his attention was called to a label on the water heater which he had purchased from the defendant. The label was located near the bottom of the heater, giving model, serial number, etc., and it was stated thereon that it was "equipped for use with MFRD gas," and also contained in very small lettering the following statement: "Warning: This heater is not to be used with bottled gas, butane or other liquified petroleum gases." The plaintiff testified he had not noticed this label, but had taken Mr. Sinkoe's word that it was the right heater. He further testified as follows: "When I went into the shower room on the night of the explosion I did not notice whether the pilot light was burning. The room could be ventilated by raising the window. You can smell the gas when you pour it in the ground tank, but you could not smell it in the building. If we had found that the pilot light had gone out we would raise the window. I used the heater which I bought from Mr. Sinkoe for about six days, and during that time I had to light it up once or twice. When the pilot light would cut off the gas would cut off; if there is no gas coming up the line the pilot light goes out. The pilot light works on a little valve or lever which you have to turn on in order to let gas in to light the pilot light after it has gone out. When the pilot light would go out I would have to turn the valve or lever to let gas come in before I could light the pilot light. I had never had any experience with one of these heaters before."

Mr. Edgar B. Terry was tendered by plaintiff as an expert, and the court found him to be such in the installation and repair of gas heaters and as a dealer in liquid gas. Mr. Terry testified: "I examined this water heater immediately after the explosion. It had a burner on it for manufactured gas and a thermostat for manufactured gas. The difference between the burner designed to burn natural or manufactured gas and one designed to burn liquid or propane gas is that the one that is manufactured to burn manufactured gas has a metal disk in the thermostat that controls the flow of gas. On the other hand, the disk in a burner designed to burn liquid gas is made of a hard bakelite, similar to rubber. . . . The one for liquid gas with a composition disk, or diaphragm,

would work on the same principle as the manufactured gas, but the reason that you use a disk with the composition on it, on the propane gas, as we say, is due to the fact it has no impurities in it to get in there and seal that, such as the manufactured gas has. Any gas gotten from oil has impurities taken out. . . . You cannot use liquid gas with the ther-mostat with the metal disk for the reason that when you do so it does away with the safety feature on the tank, due to the fact that the thermo-stat can't properly close itself and let(s) gas continue to come in when it should not. If liquid gas were used with the metal disk it would permit the gas to escape from the thermostat into the burner itself or into the pilot light which is governed by the thermostat. If a proper type of tank is used gas would not continue to come out when the pilot light goes out. If you put the liquid gas in a tank designed with the steel seal in the thermostat there is a possibility that the gas would escape or could seep by; that is the reason that liquid petroleum gas tanks use a little rubber seal to seal it. . . . I don't know whether there was anything wrong with the regulator when I saw it before the explosion or not. It had a regulator on it, you have a spring tension in that regulator that would adjust itself. You have a spring tension in that diaphragm that would adjust itself to a certain extent. If the regulator put too much pressure on it, you would not have anything burning then and the gas would escape. I saw the compressor that was on there when they were using Thomas' gas. He had to have a compressor. . . . If the regulator put on too much pressure it would blow gas right through the machine but you wouldn't have anything burning then. Then the gas would escape, but if Mr. Dalrymple had had the proper tank his gas would not have escaped since it would have been sealed off. . . . Before I consid-ered myself qualified to connect one of these heaters, or service it, I was bound by certain instructions and rules and studied and passed an exami-nation. I wouldn't have put one in unless I had had the benefit of those instructions, rules and experience. . . . To put the vent on any gas heater is the standard thing to do whenever the heater is pocketed up, but where there is ventilation it is not necessary. . . . This heater had no flue or vent. The purpose of a vent is to take the gas off or to take the heat out of the building." (This witness in his testimony often referred to the gas heater as a tank, but it clearly appears from his testi-mony as a whole, that when he referred to the "tank" he was referring to the heater in question.)

At the close of plaintiff's evidence the defendant moved for judgment as of nonsuit. The motion was granted and the plaintiff appeals and assigns error.

*McDougle, Ervin & Horack for plaintiff.*
*Henry L. Strickland and J. Laurence Jones for defendant.*

DENNY, J.   It appears the plaintiff has elected to bottom his action on the negligence of the defendant in falsely representing that the heater sold to the plaintiff, was a suitable and proper one for use with liquid gas.

"If a seller, not knowing or caring whether his representations are true or false, goes so far as to represent that the article sold is safe for a certain use, while it is imminently dangerous when put to that use, he is liable for negligence."   46 Amer. Jur., p. 943.   *Cunningham v. House Furnishing Co.,* 74 N.H. 435, 69 Atl. 120; Annotations 42 A.L.R. 1255; *Ahrens v. Moore,* 206 Ark. 1035, 178 S.W. 2d 256; *Spry v. Kiser,* 179 N.C. 417, 102 S.E. 708.   *Walker, J.,* in speaking for this Court in the last cited case, said: "Plaintiff alleges that the defendants represented the contents of the bottle to be genuine sweet oil of standard purity, and also expressly warranted it to be of that kind and quality, and he offered evidence to prove the truth of the allegations.   He sues both on tort for negligence and on contract because of warranty.   It is not required of us to lay down the rule of damages upon either cause of action, as if he shows the actionable wrong, or the contract and its breach, . . . this prevents a nonsuit."

A vendor who sells a stove that is equipped to burn one type fuel and represents that it is suitable for use with a different kind of fuel, when in fact it is imminently dangerous when so used, is liable to the same extent as if he had sold a stove knowing it to be dangerously defective.

The evidence tends to show the defendant represented that the stove purchased by the plaintiff was suitable for use with the particular type of liquid gas which the plaintiff was using in his place of business; when in fact, it was not suitable for use with that particular kind of gas. Moreover, it appears from the evidence that all the other gas appliances used by the plaintiff in his cafe were working properly on the day of the explosion.   And there is no evidence tending to show that any of the gas equipment used by the plaintiff was not properly equipped for use with Thomas' liquid gas, except the burners and thermostat in the heater purchased from the defendant.   However, there is evidence tending to show that the thermostat on this heater was not so constructed as to prevent the seepage of gas into the main burner when it was not burning, or to cut off the gas completely from the pilot burner when the pilot light went out.

The appellee insists there is no causal connection between the construction of the thermostat and the free gas in the shower room.   But he insists there is a causal connection between the possible stopping of the

compressor and the failure to light the pilot light after the flow of gas was started under compression.

It is disclosed on this record that a compressor is a part of the necessary equipment when using Thomas' liquid gas. Conceding that the compressor might have stopped or permitted the pressure to become so low that the pilot light went out, one of the very purposes of the thermostat was to cut off the flow of gas into the pilot burner if the pilot light went out.

The appellee further insists that regardless of any negligence on the part of the defendant, he is not liable because of the negligent conduct of the plaintiff, which contributed to his injury. It is contended the heater had no latent defects and the use the heater could be put to was easily discoverable upon an ordinary examination by reading the label and instructions imprinted thereon, which contained a positive warning to the effect the heater was not to be used with liquid gas.

In 46 Amer. Jur., p. 931, it is said: "In spite of his negligence, a seller is, of course, not liable therefor to a buyer who, by his own negligent conduct, has contributed to the injury. And while the use of the purchased article in a particular manner which would otherwise appear to be negligent may be proper where the buyer relies, and has a right to rely, upon the seller's assurance that it is safe to use the article in such a manner, a buyer who uses the article after he discovers the danger will be held to have assumed all the risk of damage to himself, notwithstanding the seller's assurance of safety. As in other cases in which the question of contributory negligence is involved, it is generally for the jury to determine whether, under the circumstances, the buyer was contributorily negligent in relying upon the seller's assurance." See also *Smith v. Clarke Hardware Co.,* 100 Ga. 163, 28 S.E. 73; *Bulman Furniture Co. v. Schmuck,* 175 Ark. 442, 299 S.W. 765, 55 A.L.R. 1039; *Moody v. Martin Motor Co.,* 76 Ga. App. 456, 46 S.E. 2d 197.

Contributory negligence is an affirmative defense which must be pleaded and proven. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. And a nonsuit will not be granted on this ground unless the plaintiff's evidence establishes such plea as a matter of law. Therefore, a plaintiff will not be held guilty of contributory negligence as a matter of law, unless his evidence so clearly establishes such negligence that no other reasonable inference may be drawn therefrom. *Dawson v. Transportation Co., ante,* 36, 51 S.E. 2d 921; *Hobbs v. Drewer,* 226 N.C. 146, 37 S.E. 2d 131; *Cummins v. Fruit Co.,* 225 N.C. 625, 36 S.E. 2d 11; *McCrowell v. R. R.,* 221 N.C. 366, 20 S.E. 2d 352; *Godwin v. R. R.,* 220 N.C. 281, 17 S.E. 2d 137.

Consequently, we think when the plaintiff's evidence is taken in the light most favorable to him and he is given the benefit of every reason-

able inference to be drawn therefrom, it is sufficient to carry the case to the jury. *Bundy v. Powell, supra; Beaman v. Duncan,* 228 N.C. 600, 46 S.E. 2d 707; *Nichols v. Goldston,* 228 N.C. 514, 46 S.E. 2d 320; *Lumber Co. v. Power Co.,* 206 N.C. 515, 173 S.E., 427.

The motion for judgment as of nonsuit should have been overruled.

Reversed.