JOHN T. MOODY v. HARRY KERSEY, INDIVIDUALLY, AND PIEDMONT STEEL ERECTING CO., A CORPORATION.

(Filed 20 June, 1967.)

**1. Negligence § 1—**

Negligence is the failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owes the plaintiff under the circumstances, which failure proximately causes injury which could have been reasonably foreseen.

**2. Pleadings § 28—**

A plaintiff must make out his case as alleged in the complaint.

**3. Master and Servant § 32—** Evidence of negligence of steel erecting company resulting in injury to employee of construction company held for jury.

The evidence tended to show that the operator of a crane, pursuant to his employment by a steel erecting company. was lifting a heavy chute so that its top could be fastened to the top of the elevator shaft of the structure and its lower end to the steel framework some 30 feet below. The

MOODY *v.* KERSEY.

evidence further tended to show that the crane operator was following the signals of a signalman who was standing at the top of the elevator shaft, that the chute was maneuvered so that the signalman could and did fasten one end to the top of the elevator shaft by one bolt, that the signalman was inexperienced in the work to the knowledge of the crane operator, that the signalman gave the signal to lower the chute, that when the chute was lowered its weight pulled through the one bolt and fell, as should have been foreseen, causing injury to plaintiff, an employee of the construction company who was waiting to fasten the bottom of the chute to the framework. The crane operator testified that he would not have lowered the chute had he known that only one bolt had been inserted and that he did not inquire of the signalman how many bolts had been inserted before he undertook to lower the chute. *Held:* The evidence is sufficient to be submitted to the jury on the question of the negligence of the operator of the crane in relying on the judgment of an inexperienced workman and in failing to inquire or investigate as to the manner in which the chute had been bolted at the top.

**4. Negligence § 26—**

Nonsuit for contributory negligence is proper only when the evidence, considered in the light most favorable to plaintiff and resolving all conflicts therein in his favor, establishes this defense as the sole reasonable inference.

**5. Negligence § 4—**

A person in control of machinery in a hazardous operation is under duty to exercise a degree of care commensurate with the dangerous character of the operation.

**6. Master and Servant § 29—**

An employee will not be held guilty of contributory negligence as a matter of law merely because he accepts hazardous employment in an established trade.

**7. Master and Servant §§ 34, 84—  Crane operator held employee of steel erecting company and not construction company.**

Defendant leased a crane with operator to a construction company, the crane operator being in sole charge of the manner in which materials and parts should be elevated for the performance of the construction work, and the construction company giving only instructions as to the position to which the materials and parts should be carried in the performance of the work. *Held:* The crane operator was an employee of the crane company and was not a special employee or agent of the construction company, and therefore the Workmen's Compensation Act does not preclude recovery by an employee of the construction company for injury resulting from the negligence operation of the crane.

APPEAL by plaintiff from *Latham, S.J.,* 7 November 1966 Civil Session of GUILFORD (Greensboro Division).

Civil action by plaintiff to recover for personal injuries suffered when a heavy metal chute suspended from a crane operated by the individual defendant, an employee and officer of the corporate defendant, fell a short distance and bounced onto plaintiff's foot.

On 16 July 1963, North State Pyrophyllite Company (hereinafter referred to as North State), was constructing a new batching plant upon its premises near Greensboro. The plans called for a building on top of which would be installed three large storage tanks, an elevator tower or shaft, mixing bins, and a metal Y-shaped chute connecting the elevator shaft and the mixing bins. North State had contracted with defendant Piedmont Steel Erecting Company (hereinafter referred to as Piedmont) for Piedmont to do certain steel construction work involving the placing of certain pieces of steel by use of Piedmont's crane.

On 16 July 1963 a metal chute approximately thirty feet in length and weighing 2000 to 2500 pounds had been assembled on the ground near the building. Piedmont was to use its crane to lift the chute into position so that it could be fastened at one end to the top of the elevator shaft and at the lower end to a steel framework some thirty feet immediately below the top of the elevator shaft. Defendant Kersey was to operate the crane.

That morning two employees of Piedmont, who usually acted as signalmen for Kersey, came to work in an intoxicated condition. Kersey sent them home and decided to abandon the operation for that day. However, one Ray Jefferson, an employee of North State and the immediate supervisor of plaintiff, volunteered to act as Kersey's signalman. Jefferson was inexperienced as a signalman, but plaintiff's evidence shows Jefferson had acted as signalman for Kersey at least once some three years prior to the accident.

Agreeing to Jefferson's offer to act as signalman, Kersey rode Jefferson on the crane cable to a platform on top of the elevator shaft sixty feet above the ground. Plaintiff, an employee of North State, and two employees of the corporate defendant were located approximately thirty feet below Jefferson on the framework. Kersey was dependent upon Jefferson's signals in the operation of the crane, as Kersey could only see the area around the top of the elevator shaft. The rest of the operational area was obscured from Kersey's view by the building and two large tanks. The chute was attached to the crane cable and, pursuant to signals given by Jefferson, Kersey operated the crane so as to life the chute to the place where it was to be attached. Plaintiff and the two employees of Piedmont were attempting to position the lower part of the chute, and Jefferson fastened the top of the chute to the elevator shaft by inserting one bolt. There is some conflict concerning a conversation that then ensued between Jefferson and Kersey as to the bolting of the top of the chute, which will be more fully discussed in the opinion. Following the conversation, Jefferson gave a signal to lower the chute and Kersey began to slacken the cable so as to lower the bottom end of

the chute slightly. The weight of the chute caused it to tear away from the bolt and fall a few feet, striking plaintiff's right foot, causing personal injuries.

Plaintiff alleged that defendants were negligent in that:

"(a)  He carelessly and negligently operated his crane in such a manner that he 'slacked off' the cable too rapidly and caused said chute to tear away from the bolt holding it when he knew, or should have known by the exercise of reasonable care, that the one bolt would not be able to hold the chute if the weight of same were exerted against the bolt;

"(b)  He was careless and negligent in relying on the signals of Ray Jefferson, who was an inexperienced signalman, and particularly so on account of the very hazardous undertaking that he was engaged in;

"(c)  That . . . Kersey . . . negligently failed to make any personal investigation of the chute, the bolt holding the same, or view the work area and the position of the plaintiff and the other men in the vicinity, before he undertook to lower the chute;

"(d)  . . . (T)he crane being then and there operated by the defendant Kersey, which said crane was owned by the defendant Piedmont Steel Erecting Co., was in a bad state of repair and faulty operational condition, which the defendant Kersey had knowledge thereof;

"(e)  That the defendant Kersey was further careless and negligent in that he failed to warn the plaintiff and the other men standing in the zone of danger to withdraw temporarily from the area until he had slackened up on the cable and lowered the chute;

"(f)  That on said occasion, the defendant Kersey did not have the crane he was operating under proper control, and he failed to exercise the due care required of him, in order that he would not harm and injure the plaintiff."

At the close of plaintiff's evidence, the trial court allowed defendants' motion for judgment of nonsuit. Plaintiff appealed.

*Benjamin D. Haines for plaintiff appellant.*

*Dupree, Weaver, Horton, Cockman & Alvis for defendant appellees.*

BRANCH, J.  The sole question presented by this appeal is: Did the trial court err in entering the judgment of nonsuit at the close of plaintiff's evidence?

Defendants contend there is not sufficient evidence of actionable negligence to permit the issue to be submitted to a jury.

We find no evidence in the record that will allow the reasonable inference that the signals given by Jefferson were the proximate cause of plaintiff's injury. The signals given by him allowed defendant Kersey, without difficulty, to raise the chute from the ground and place it in position to be properly secured. All the evidence shows that Jefferson gave comprehensible signals and that there was no mishap as a result of misunderstanding of signals given by Jefferson to Kersey.

> "In an action for recovery of damages for injury resulting from actionable negligence the plaintiff must show: (1) That there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed; and (2) That such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed. *Whitt v. Rand,* 187 N.C. 805, 123 S.E. 84; *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Mitchell v. Melts, post,* 793. See, also, *Stephens v. Lumber Co.,* 191 N.C. 23, 131 S.E. 314." *Luttrell v. Mineral Co.,* 220 N.C. 782, 18 S.E. 2d 412.

Further, plaintiff offered no evidence to sustain his allegations that defendant Kersey did not have the crane under proper control, or that the crane was in a bad state of repair and in faulty operational condition. Nor was there any evidence that Kersey "slacked off" the cable too rapidly, thereby causing the chute to tear away from the bolt holding it.

> "A plaintiff must make out his case *secundum allegata. Barnes v. Caulbourne,* 240 N.C. 721, 83 S.E. 2d 898. There can be no recovery except on the case made by his pleadings. *Collas v. Regan,* 240 N.C. 472, 82 S.E. 2d 215. Proof without allegation is no better than allegation without proof. *Messick v. Turnage,* 240 N.C. 625, 83 S.E. 2d 654. When there is a material variance between allegation and proof, motion for judgment of nonsuit will be allowed. *Suggs v. Braxton,* 227 N.C. 50, 40 S.E. 2d 470." *Andrews v. Bruton,* 242 N.C. 93, 86 S.E. 2d 786.

Thus plaintiff's case must rest on whether there is sufficient evidence to go to a jury on plaintiff's allegations that defendant Kersey

was negligent in failing to make any personal investigation of the chute or the bolt holding the same, or that defendant negligently "slacked off" the cable when he knew, or should have known, that the one bolt would not hold the chute. Clearly, the condition of the chute before it left the ground in no way contributed to plaintiff's injury. Plaintiff's contention that defendant should have made a personal investigation of the chute or the bolt holding the same, or that defendant Kersey should have known there was only one bolt holding the chute, must be limited to information received from plaintiff's fellow employee, Jefferson. Defendant Kersey was operating the crane, and in order to have made a personal investigation he would have been forced to abandon the controls of the crane, climb the boom of the crane, and jump from the boom to the platform, or he would have had to lay the boom on the platform and climb to the platform, which would have resulted in displacing the chute from the desired position. To follow either of such courses would not be the choice of a reasonably prudent man. "Negligence is the failure to exercise that degree of care for others' safety which a reasonably prudent man under like circumstances would exercise." Strong's N. C. Index, Vol. 3, Negligence, Sec. 1 (Supp.). *Sparks v. Phipps*, 255 N.C. 657, 122 S.E. 2d 496.

Defendant Kersey, by adverse examination offered by plaintiff, stated: "I don't *remember* Ray Jefferson advising me that there was only one bolt holding the chute. He said he had the top bolted and I asked him would it help any if we lowered it a little bit. . . . and he said yes. I said, 'You give me a signal.' He gave me a regular hand signal for slacking the load down a little bit. . . . I did not make any inquiry of Mr. Jefferson as to how many bolts were holding the chute before I undertook to lower it. The reason was he said that he had the top bolted. . . . If I had known at that time that only one bolt was holding this chute, I would not have undertaken to lower the chute. I thought Jefferson had all the bolts across the top." (Italics ours.)

In this connection John T. Moody, the plaintiff, testified: "Immediately before the accident, I heard some conversation between Ray Jefferson and the defendant Harry Kersey. The only thing I heard them say was that one bolt was in the chute. I am talking about Mr. Jefferson. I heard him say that it was only one bolt. I did not hear Mr. Kersey make any response to that statement. Immediately after I heard Mr. Jefferson make that statement, that was when they lowered — I did observe the chute being lowered immediately before it fell; . . ."

Ray Jefferson, assistant superintendent in charge of maintenance

for North State Pyrophyllite Company, testified: "I have not had previous experience as a signalman in steel erection. A few times I had worked with Mr. Kersey on other jobs prior to this one in putting up chutes. I have never been employed as a signalman for a crane operator. . . . It is very difficult to recall exactly what I said before I gave the hand signal to Mr. Kersey. I know that I hollered, 'I have got it bolted,' when I got the bolt in."

Upon a motion for judgment of nonsuit the evidence introduced by plaintiff is to be interpreted in the light most favorable to him, all conflicts therein are to be resolved in his favor, and all reasonable inferences therefrom which are favorable to him are to be drawn. *Lewis v. Barnhill*, 267 N.C. 457, 148 S.E. 2d 536.

We recognize the principle that a person is not bound to anticipate negligent acts or omissions on the part of others, but in the absence of anything which gives, or should give, notice to the contrary, he is entitled to assume that every other person will perform his duty and that he will not be exposed to danger which can come to him only by violation of duty by such other person. *Weavil v. Myers*, 243 N.C. 386, 90 S.E. 2d 733.

In the instant case defendant Kersey was in control of machinery being used in a hazardous operation, and he was obliged to exercise a degree of care commensurate with the dangerous character of the operation. Strong's N. C. Index, Vol. 3, Negligence, Sec. 4, p. 445. When his regular signalman became unavailable, he elected to proceed with Jefferson, a person who had acted in this capacity, at most, on one other occasion. Shortly before plaintiff's injury, defendant Kersey was talking to Jefferson. He could hear Jefferson, and Jefferson could hear him. Although Kersey states that he would not have lowered the chute had he known there was only one bolt, it may be found he relied on the judgment of an inexperienced workman and failed to make any inquiry or investigation as to the manner in which the chute was bolted. Further, defendant states that he did not *remember* Jefferson advising him that there was only one bolt holding the chute. There was evidence from plaintiff, who was approximately thirty feet away, that he heard Jefferson say "that one bolt was in the chute" shortly before he was injured. Kersey's testimony tends to confirm that shortly before plaintiff was injured he *could* hear Jefferson and that statements were made relative to bolting the chute at that time. This evidence allows a reasonable inference that defendant knew, or by the exercise of reasonable care should have known, that there was only one bolt in the chute, and that he could have reasonably foreseen that the bolt would pull through the metal when he "slacked off," so that the weight of the

chute came onto the bolt. Further, that he could have reasonably foreseen that some injurious result was probable under the circumstances. Thus, we hold there was sufficient evidence of negligence to survive the motion of nonsuit.

Plaintiff cannot be held guilty of contributory negligence as a matter of law. His mere presence on the job is not sufficient to infer negligence.

"Men may properly and lawfully do work that is essentially dangerous in its nature, and a person engaged in the performance of such work may know that it is dangerous, and yet not be guilty of contributory negligence in the performance thereof, unless he voluntarily and unnecessarily exposes himself to the danger." 38 Am. Jur., Negligence, § 182, p. 860. Plaintiff was engaged in new duties and was attempting to position the lower end of the chute. This operation demanded his undivided attention. The fact that the person who was doing the signalling and securing the chute above him was his immediate superior is compatible with the assumption that he would not be exposed to a danger which would come from a violation of a duty by such other person. *Weavil v. Myers, supra; Lewis v. Barnhill, supra.* The only possible notice of danger came from Jefferson, his immediate superior, who stated that he had fastened one bolt. Whether this was sufficient to give notice of a negligent act by Jefferson is a question for the jury.

> "(M)otion for nonsuit may not be allowed on the ground of contributory negligence unless plaintiff's own evidence establishes such negligence so clearly that no other conclusion can reasonably be drawn therefrom." *Lewis v. Barnhill, supra.*

Finally, defendants contend that Kersey was the special employee or agent of plaintiff's employer, North State Pyrophyllite Company, and therefore was under North Carolina Workmen's Compensation Act. In the case of *Weaver v. Bennett,* 259 N.C. 16, 129 S.E. 2d 610, Bobbitt, J., speaking for the Court, said:

> " '2. The crucial test in determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it.* (Citations.)

> " '3. A servant is the employe of the person who has the *right* of controlling the manner of his performance of the work, irrespective of whether he actually *exercises* that control or not. (citations)

" '4. Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work*, the servant remains in the service of his original employer. (citations)' "

Here, Kersey was employed by Piedmont Steel Erecting Company, a corporation, and was operating a crane which belonged to the corporation. The company was paid an hourly rate. The record does not reveal there was any other person on the job as a crane operator. When Kersey's signalmen arrived in an intoxicated condition, it was clearly Kersey's decision as to whether the crane would be operated that day. The only instructions given by North State or its employees to Kersey was where the chute was to be carried so as to be in position for final erection. How he moved the chute into position was left entirely to his skill, ability, and judgment. The signals given by Jefferson were not orders but merely information necessary for proper operation of the crane, since Kersey could not visually position the chute. The fact that Kersey was an officer of the corporation would not prevent the corporation from furnishing other operators on this particular job. Thus, there is not sufficient evidence to overcome the factual presumption that the operator remained in the employ of his original master, Piedmont Steel Erecting Company. Nor is there sufficient evidence to show that North State, or its employees, assumed control over Kersey's manner of operating the crane so as to make Kersey a special employee or agent of North State. *Weaver v. Bennett, supra; Lewis v. Barnhill, supra; McWilliams v. Parham,* 269 N.C. 162, 152 S.E. 2d 117.

For reasons stated, there was error in granting defendants' motion for nonsuit.

Reversed.