**Mary Frances LONG, Appellant,**

v.

**BURDETTE MANUFACTURING COM-
PANY, Appellee.**

**No. 13699.**

United States Court of Appeals.
Fourth Circuit.

May 22, 1972.

James P. Erwin, Jr., Asheville, N. C. (Gudger & Erwin, Asheville, N. C., on the brief), for appellant, ånd Landon H. Roberts, Asheville, N. C., for appellee.

Before HAYNSWORTH, Chief Circuit Judge, and SOBELOFF and BOREMAN, Senior Circuit Judges.

BOREMAN, Senior Circuit Judge:

Mary Frances Long (hereafter plaintiff or Miss Long) brought a "products liability" diversity action against Burdette Manufacturing Company (Burdette) seeking damages for personal injuries allegedly resulting from her use, in the manner hereinafter detailed, of an audiovisual table which was a part of the regular equipment in the Oakley Elementary School where she was employed as librarian and Assistant Principal. A portion of the table, including that part which caused her injury, was claimed by Miss Long to have been negligently manufactured by Burdette and that this negligence was the proximate cause of her injury.

The accused table was of steel construction, approximately thirty-three inches high, and contained three shelves, each measuring eighteen inches in width and twenty-four inches in length. The edges of each shelf were constructed with a metal flange turned or bent downward. The table was mounted on four small wheels or casters, so that the edges of the bottom shelf were about four inches above the floor, and was of

the type commonly used in schools to support a movie or slide projector and equipped with an electrical outlet and cord to facilitate such use.

On the occasion of the accident the plaintiff, in company with one Miss Alexander, was working in a new school library room which was approximately twenty feet wide by eighty feet long, well lighted, and unfurnished except for bookshelves attached to the walls. The floor was level and covered with an unwaxed asphalt or rubber tile; the floor space was clear, without any obstruction of any kind, except at one end where heavy boxes of books were piled, the books to be later sorted and placed in the bookcases.

To transport the books from one end of the room to the other Miss Long was using the wheeled table with a box of books, weighing from thirty to forty pounds, resting on the top shelf. The under edge of the flange on the bottom steel shelf was sharp. With her arms and hands extended behind her and grasping a corner of the top shelf with each hand, Miss Long was pulling the table with its heavy load of books. Thus, with her back to the table, she was walking toward the opposite end of the long room and the flanged edge of the bottom shelf of the table was bumping her heels at every step. After she had walked forward about twenty feet plaintiff caught her left heel, just above the top of her soft shoe, under the flange and seriously and permanently injured her Achilles' tendon.

At the close of plaintiff's evidence Burdette moved for a directed verdict in its favor. The motion was overruled but Burdette elected not to offer evidence and renewed its motion which was then granted. The motion was based on two theories: first, that there was no substantial evidence of any negligence on the part of Burdette proximately causing plaintiff's injury; and second, that plaintiff's evidence showed conclusively that she was guilty of contributory negligence as a matter of law. The formal judgment order, although reciting the grounds assigned by Burdette in support of its motion, is unclear as to the basis of the court's action in sustaining the motion.[1] However, the oral statement of the court in granting Burdette's motion clearly indicates a finding that plaintiff's "conduct" in her use of the table constituted contributory negligence as a matter of law and barred her right to recover from the defendant.[2]

1. The judgment order reads, in part, as follows:

At the close of plaintiff's evidence defendant moved for a directed verdict pursuant to rule 50(a) which was overruled, and having elected not to offer evidence, at the conclusion of all the evidence renewed its motion for a directed verdict for that there was not any substantial evidence of any negligence on the part of the defendant proximately causing the plaintiff's injury and damage, and secondly, that the plaintiff's evidence showed conclusively that she was guilty of contributory negligence as a matter of law barring her recovery from the defendant, which motion the court sustained.

2. The court stated orally from the bench:

The Court is of the opinion that there is a very serious question as to the negligence of the defendant. By giving the plaintiff the benefit of the doubt and holding that the defendant was negligent as alleged, this Court cannot escape the conclusion that the conduct of the plaintiff in turning her back to the table and pulling it for twenty feet or more with it bumping her heels finally resulting in serious injury was an act amounting to want of ordinary care which concurs with the act of the defendant so as to constitute the act of the plaintiff as a proximate cause of her injury, and that she could reasonably foresee that such act would result in injury to her heel. The plaintiff's evidence when taken in a light most favorable to her clearly establishes contributory negligence and that no other reasonable inference or conclusion can be drawn therefrom. The Court therefore holds that her conduct on the occasion constitutes contributory negligence as a matter of law and bars her right to recover from the defendant. The Court therefore directs a verdict for the defendant and allows the motion.

■ If the district court correctly determined as a matter of law that the plaintiff was guilty of contributory negligence which constituted a proximate cause of her injury Burdette would be entitled to a judgment in its favor[3] regardless of any negligence on the part of Burdette which might also have been a proximate cause of plaintiff's injury.[4] However, we conclude that the court erred in finding Miss Long contributorily negligent as a matter of law.

■ The plaintiff was under a duty to use ordinary care for her own safety while transporting the books on the table. Ordinary care is that which "an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." Clark v. Roberts, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965). One of the circumstances affecting the degree of care which an ordinarily prudent person would exercise is the danger which is to be avoided. Alford v. Washington, 244 N.C. 132, 92 S.E.2d 788 (1956). Since plaintiff was not bound to anticipate that the edge of the bottom shelf of the table might be extremely sharp due to the manufacturer's negligence[5] the degree of care which she was required to observe was arguably slight because the danger or risk of an injury inherent in pulling the table as she did might well be considered minimal if the lower shelf of the table had been free of defects. Of course, some risk of possible harm, even though slight, from bumping the table against her heels was present, a risk which was surely known to plaintiff as it would be known to persons who have pulled an unwieldy piece of furniture or equipment behind them.

■■ The undertaking of a known risk of harm does not, however, standing alone, constitute negligence. To constitute negligence under the law the risk involved must be "unreasonable," that is, a risk that an ordinarily prudent person would not take. Thus, the plaintiff was contributorily negligent *only* if the risk of harm to herself which she assumed in her manner of pulling the table was one which an ordinarily prudent person would not have undertaken. She had much to gain by using the table to transport the books from one end of the library to the other. By doing so she avoided either carrying the heavy boxes across the room or making numerous trips. Since there was at least arguably only slight danger of which Miss Long may be held to have had knowledge in pulling the table behind her, it cannot be said that an ordinarily prudent person in like circumstances would not have risked the danger and similarly undertaken to pull the table unless there was a safer alternative means available by which the work could be expedited.

It could be argued that there was an alternative method; the plaintiff could have pushed the table before her. It could be argued further that pushing the table not only would have involved less danger to her person but would have been far less awkward and would have caused her no inconvenience. But these are all considerations which we think should have been submitted to the jury for determination. The plaintiff's actions and conduct do not establish contributory negligence so clearly and conclusively that no other reasonable inference may be drawn therefrom.

Having reached the conclusion that Burdette was not entitled to a directed verdict in its favor we return briefly to the question arising with respect to the plaintiff's claim of negligence and liability on the part of Burdette in manufacturing the portion of the table which caused her injury. For the purposes of its disposition of the case the district

3. Clark v. Roberts, 263 N.C. 336, 139 S.E. 2d 593 (1965); Ramey v. Southern Ry. Co., 262 N.C. 230, 136 S.E.2d 638 (1964).

4. Wallsee v. Carolina Water Co., 265 N.C. 291, 144 S.E.2d 21 (1965); Marshall v. Southern Ry. Co., 233 N.C. 38, 62 S.E. 2d 489 (1950).

5. *See* Moody v. Kersey, 270 N.C. 614, 155 S.E.2d 215 (1967); Coleman v. Burris, 265 N.C. 404, 144 S.E.2d 241 (1965).

court appears to have assumed Burdette's negligence.

The following additional facts are shown by the evidence. In 1961 Southern School Service, a corporate dealer in audio-visual equipment and school supplies, contracted with Burdette for the manufacture of portions of tables of the type which Miss Long was using. The plans and specifications for the tables were prepared by Burdette from a model supplied by Southern School Service.[6] Over the next three years Burdette delivered several hundred such tables in cartons to its customer, Southern School Service. The tables as delivered were incomplete; Southern School Service added the electrical apparatus with a bracket and screws for mounting, a decal with the symbol "3–S," a rubber mat for the top shelf of the table, and the rubber wheels or casters. Burdette's president was aware that Southern School Service intended to sell and deliver the tables with casters installed to the public school system of North Carolina. In fact, the bottom of each of the four legs of the table was constructed so as to provide a place suitable for the installation of the casters.

On September 5, 1962, the vice-president of Southern School Service wrote a letter to the president of Burdette informing him that there had been customer complaints that the edges of the tables were sharp and that several people had reported cutting their hands thereon. In response, by letter dated September 13, 1962, Burdette's president attributed the sharp edges to the possible use of a dull, bent blade in the manufacturing process and in cutting the steel for the shelves. At no time after this correspondence did Burdette undertake to warn prospective users of the tables of the possibly sharp edges, did not institute any special inspection procedures, and did not alter or change its manufacturing process with respect to the edges of the shelves. On September

27, 1962, Southern School Service delivered only two tables of the type in question to the school where Miss Long was employed and it was one of these which she was using in the library.

The evidence disclosed that the tables had no readily distinguishable front and back and that they were not equipped with bars, handles, or other projections by which they could be pushed or pulled. Neither Burdette nor Southern School Service furnished any instructions for the use of the tables or as to the manner of handling in moving them from place to place. There was evidence that one Evelyn Davis, when using a Burdette table in a manner quite similar to the use by Miss Long, suffered a similar injury.

The North Carolina rule relative to taking the question of contributory negligence away from the jury is the same in "products liability" cases as it is in other cases bottomed on the plaintiff's negligence. In Dalrymple v. Sinkoe, 230 N.C. 453 at 458, 53 S.E.2d 437 at 440 (1949), the court states the rule to be as follows:

"Contributory negligence is an affirmative defense which must be pleaded and proven . . . . And a nonsuit will not be granted on this ground unless the plaintiff's evidence establishes such plea as a matter of law. Therefore, a plaintiff will not be held guilty of contributory negligence as a matter of law, unless his evidence so clearly establishes such negligence that no other reasonable inference may be drawn therefrom. . . ."

Dalrymple involved injuries to the plaintiff from the explosion of a gas heater sold to him by the defendant and it was held that the failure of the plaintiff to read a warning label was not contributory negligence as a matter of law. As the court said, "Consequently, we think when the plaintiff's evidence is taken in the light most favorable to him and he is given the benefit of every rea-

6. There was testimony to the effect that the State of North Carolina had imposed certain requirements in connection with the table specifications. The extent of such requirements is not clear from the record.

sonable inference to be drawn therefrom, it is sufficient to carry the case to the jury." 53 S.E.2d at page 440.

In Swaney v. Peden Steel Company, 259 N.C. 531, 131 S.E.2d 601 (1963), the Supreme Court of North Carolina set forth certain general principles to be followed in products liability cases and adopted and approved certain sections of the Restatement of Torts.[7]

It is a matter of some speculation whether the law of North Carolina would dictate that Burdette, which designed and manufactured its tables from a model furnished to it, and which manufactured and shipped to its customers, for completion, only the frames of the tables, was a "manufacturer of a chattel" in the sense that that term is used in the Restatement of Torts, section 395, and pertinent comments thereunder. It is reasonable to assume, however, that since the Supreme Court of North Carolina in Swaney, supra, adopted and approved certain sections of the Restatement of Torts (1934) that it would likewise follow Restatement, 2d, Torts, section 395, Comment (m).

The plaintiff's argument, in brief and orally, goes like this. She was using the table in a manner for which it was designed in that she was rolling the table across the floor and was making use of the shelves. The table was equipped with wheels and the shelves were of such character as to support items which needed to be moved from place to place. Burdette had knowledge of the design and of the likely use of the equipment. With knowledge that persons such as Miss Long would come in direct contact with the table the existing danger is apparent. While the severity of injury such as Miss Long suffered might not be readily anticipated, nonetheless, it could be expected that equipment with exposed sharp edges would cause injury. Burdette failed to exercise reasonable care to adopt a safe plan or design in this respect. There was no inspection procedure, no attempt to hem or ease the edges, and even after notice, no special effort to correct the sharp edge problem. It is not likely that Miss Long would realize the dangerous condition of the table. There was no warning on the equipment relative to operation or existing dangers. The physical appearance of the equipment did not outwardly suggest danger to one unfamiliar with a particular defect. There were no handles or designation of a front or back of the equipment. The sharp edge causing injury was exposed to bodily contact but not readily visible to one using the equipment. Finally, Burdette's own explanation for the existence of the sharp edges as reported in his letter to McNeill [Southern School Service] was the use of a dull, bent cutting blade.

The district court, in its oral explanation of the grant of Burdette's motion for a directed verdict, stated: "The Court is of the opinion that there is a very serious question as to the negligence of the defendant." The court

7. Swaney did not involve a manufacturer who designed his product from a model supplied by another or a manufacturer who supplied only a component part of an offending chattel. No cases from North Carolina involving such a manufacturer have been called to our attention nor has our research disclosed such cases. The question presented may involve, inter alia: (1) whether any of the additions made to the tables by Southern School Service (mounting the tables on wheels despite knowledge of the possibly sharp edges) would constitute an "independent act of negligence" which would isolate Burdette from the injury, see Rulane Gas Company v. Montgomery Ward & Co., 231 N.C. 270, 56 S.E.2d 689 (1949); and (2) the effect, if any, of Restatement of Torts, section 395 (1934), which was cited by the North Carolina Court in support of its opinion in Rulane. Comment (f) under section 395 states, in part: "It is not necessary that the manufacturer should expect his product to be used in the form in which it is delivered to his vendee. A manufacturer of parts to be incorporated in the product of his vendee or others is subject to liability under the rule stated in this section if they are so negligently made as to render the products in which they are incorporated unreasonably dangerous for use." Cf. Restatement, 2d, Torts, section 395, Comment (m).

**454**

then proceeded to give the plaintiff the benefit of the doubt and held that the defendant was negligent as alleged.

We have held that the question as to Miss Long's contributory negligence was a matter for jury determination. We conclude also that whether the alleged negligence of Burdette, if any, constituted a proximate cause of the plaintiff's injury presented a jury question. We think both of these issues should have been submitted to the jury and that the plaintiff is entitled to a new trial.

Reversed and remanded for a new trial.