RONALD LEE BEATTY, PLAINTIFF v. H. B. OWSLEY & SONS, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF v. KAISER ALUMINUM AND CHEMICAL SALES, INC., A CORPORATION, THIRD-PARTY DEFENDANT

No. 805SC984

(Filed 21 July 1981)

1. Master and Servant § 7— crane operator—agent of general employer

An employee who was allegedly operating a crane at the time plaintiff suffered his injuries was an agent of defendant general employer where defendant was in the business of renting heavy equipment and people to operate the equipment; defendant had the power to hire and fire the crane operator; the crane operator was a specialist; and the fact that the third party defendant special employer instructed the operator specifically when to lift aluminum

panels, how to lift them, and where and how to place them was not enough, standing alone, to make the operator an employee of the third party defendant.

**2. Negligence § 29.2— operation of crane—sufficiency of evidence of negligence**

In plaintiff's action to recover for personal injuries sustained during the operation of a crane, plaintiff offered ample evidence from which the jury could have found that defendant's agent negligently failed to take the slack out of the cables of a crane, allowing a spreader bar to be balanced precariously and to fall on plaintiff.

**3. Negligence § 35.2— use of crane—no contributory negligence as matter of law**

In an action to recover for personal injuries sustained by plaintiff during the operation of a crane evidence did not disclose that plaintiff was contributorily negligent as a matter of law where it tended to show that defendant leased a crane and provided an operator to plaintiff's employer; plaintiff was standing where he had a right to be and in fact needed to stand in order to perform the duties which defendant knew plaintiff had to perform; plaintiff was unable to determine from his location how much slack there was in the cables; plaintiff was unable to determine by observation how precariously balanced a spreader bar was; and plaintiff did nothing to contribute to defendant's agent leaving excessive slack in the cables.

**4. Rules or Civil Procedure § 33— answers to interrogatories—admissibility**

In an action to recover for personal injuries sustained by plaintiff during the operation of a crane, the trial court erred in excluding defendant's answers to interrogatories where plaintiff was not seeking by their admission to prove the truth of the matters asserted therein, but was instead seeking to prove that defendant had knowledge or notice of the facts declared, for example, the inherently dangerous condition of spreader bars without supporting braces, or to show that defendant believed them to be true and failed to act.

APPEAL by plaintiff from *Tillery, Judge.* Judgment entered 7 December 1980 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 10 April 1981.

Plaintiff, Ronald Lee Beatty, appeals from a directed verdict for the defendant, H. B. Owsley & Sons, Inc. (Owsley), in this personal injury action. Plaintiff, a material handler for Kaiser, alleged in his Complaint (1) that Owsley rented a large Manitowoc Model 4000 crane to Kaiser; (2) that Owsley's agent and employee, K. O. Thompson, Jr., operated the crane at Kaiser's Wilmington, North Carolina plant; and (3) that Owsley's negligent acts and omissions in the design and use of the crane caused a steel spreader bar attached to the crane to fall on, and inflict serious permanent injuries to, the plaintiff.

Owsley filed an Answer, admitting that it had rented the crane to Kaiser but denying that Thompson was operating the crane at the time of the injury and denying that Owsley was negligent in the use, design, inspection or operation of the crane. Owsley further alleged that the plaintiff was contributorily negligent; that Kaiser's negligence was the sole and proximate cause of plaintiff's injury; and that if Owsley were in any way negligent, then Kaiser's negligence joined and concurred with Owsley's negligence to produce plaintiff's injuries.[1]

Kaiser manufactures aluminum panels for assembly and installation in ocean-going vessels which carry natural gas. These panels vary in size from two-foot panels to fifty-foot panels which weigh over 100,000 pounds. The crane, owned by Owsley and leased to Kaiser, is used to move the panels from the plant to barges on the Cape Fear River.

On 23 September 1976 plaintiff's foreman, John Smith, instructed John Franks (a Kaiser employee), K. O. Thompson (the crane operator), and the plaintiff to move a particular panel back to the plant for repairs.[2] Franks gave hand signals to Thompson, and plaintiff got in position to attach the spreader bars to the panel. Plaintiff approached the spreader bars to make the attachment, and Thompson left the crane to get a tagline (a long rope used to keep a panel steady). Additionally, at that time, the cables attached to the spreader bars were slack; normally during this procedure the cables are taut. As plaintiff attempted to attach the spreader bars to the panel, and before he could touch the spreader bars, one of the spreader bars fell across his leg. Plaintiff was hospitalized for several months, was out of work for a year, and is unable to perform heavy lifting work which he performed prior to the accident.

---

1. Owsley also filed a third-party complaint against Kaiser. By consent of all the parties, the third-party complaint was severed from the plaintiff's action against Owsley. Kaiser's liability, if any, either to Owsley or to plaintiff under the Workers' Compensation Law may be determined at a later date.

2. To facilitate movement, the panels are attached to the crane by the use of two steel spreader bars, one spreader bar being placed on each side of a panel. The spreader bars are attached to the crane's cables. The spreader bars themselves have additional cables hanging from them which are used to attach the panel. Each spreader bar weighs approximately 1,000 pounds. A material handler is responsible for attaching the spreader bar cables to the panels.

*Franklin L. Block for plaintiff appellant.*

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Henry L. Anderson, Jr., for defendant appellee.*

BECTON, Judge.

I

The questions presented by plaintiff's second assignment of error are (1) whether the evidence shows negligence by Owsley[3]; and (2) whether the evidence shows plaintiff was contributorily negligent as a matter of law. The standard is so well known that it needs no citation: A defendant's motion for a directed verdict made under Rule 50(a) of the Rules of Civil Procedure presents the question of whether the evidence is sufficient to go to the jury. All of the plaintiff's evidence must be taken as true, and the plaintiff must be given the benefit of every reasonable inference which may be drawn from the evidence. Moreover, all contradictions, conflicts and inconsistencies must be resolved in plaintiff's favor. With this standard in mind, we address the parties' contentions concerning (1) agency, (2) negligence, and (3) contributory negligence.

AGENCY

[1] Owsley admits that it rented the Manitowoc Model 4000 crane to Kaiser; that K. O. Thompson, Jr. was the operator of the crane on 23 September 1976; that on 23 September 1976, Thompson was employed by, and received his salary from, Owsley[4]; and that Owsley "is an expert in the field of work requiring cranes and its operators are experts in the performance of their duties in

---

3. Agency—that is, whether Thompson as the operator of the crane was the employee-agent of Owsley—is subsumed in this first question.

4. Owsley had consistently argued that Thompson was their employee "only in the limited sense . . ." and that Thompson was actually an agent of Kaiser. Specifically, in its Amended Answer to Interrogatory No. 2 propounded by plaintiff, Owsley said:

2. Yes. At said time the operator, K. O. Thompson, Jr. received a salary and/or wages from H. B. Owsley & Sons, Inc. and was in a status of "employee" only for the purposes of receiving his salary directly from H. B. Owsley & Sons, Inc. but was not the agent of H. B. Owsley & Sons, Inc., but was the agent of Kaiser Aluminum & Chemical Sales, Inc., a corporation, and

the operation of cranes. . . ." Owsley argues, however, that it did not directly control or supervise Thompson. The fact that Thompson was sent to the Kaiser plant several months prior to the plaintiff's injuries and the fact that Owsley did not come to Kaiser directly to supervise Thompson's work merely begin the inquiry. A servant can have two masters, a general employer and a special employer. The power of control is the real test of liability:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workman's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.

1C A. Larson, Workmen's Compensation Law, § 48 (1980).

The North Carolina Supreme Court has gone further than Professor Larson and has held a general employer liable even when the special employer controlled the details of the work *and* the manner of doing the work.

> A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out to the servant the work to be done, or supervises the performance thereof, or designates the place and time for such performance, or gives the servant signals calling him into activity, or gives him directions as to the details of the work *and the manner of doing it.* (Emphasis added.)

*Weaver v. Bennett,* 259 N.C. 16, 25, 129 S.E. 2d 610, 616 (1963); 57 C.J.S. *Master and Servant* § 566 (1948). *See also Moody v. Kersey,* 270 N.C. 614, 155 S.E. 2d 215 (1967). Consequently, the fact that Kaiser instructed Thompson when to lift panels, how to lift

the term "employee" as used herein is used only in the limited sense as one whose contract or relationship with H. B. Owsley & Sons, Inc. was the receipt of salary from same, but at the time herein involved said operator was under the direct control, direction and employment of Kaiser Aluminum and Chemical Sales, Inc., and H. B. Owsley & Sons, Inc. had no control, discretion or supervision of said operator whatsoever.

panels, and where and how to place them is not enough, standing alone, to make Thompson an employee of Kaiser.

It is significant that Owsley had the power to hire and fire Thompson, that Thompson was a specialist—a skilled crane operator—and that Oswley was in the business of renting heavy equipment and people to operate the equipment. We quote relevant portions of Restatement (Second) of Agency § 227, Comment c (1958):

> [A] continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.

> A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. . . . [T]he fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality.

We find the language in *Mature v. Angelo*, 373 Pa. 593, 97 A. 2d 59 (1953), which was specifically approved by the North Carolina Supreme Court in *Weaver v. Bennett*, compelling:

> 4. Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrowing employer in fact assumes control of the employe's manner of performing the work, the servant remains in the service of his original employer.

> 5. Facts which indicate that the servant remains the employe of his original master are, among others, that the latter has the right to select the employe to be loaned and to discharge him at any time and send another in his place, that the lent servant has the skill of a technician or specialist which the performance of the work requires, that the hiring

is at a rate by the day or hour, and that the employment is for no definite period.

> 6. The mere fact that the person to whom a machine and its operator are supplied points out to the operator from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of employe and employer between the operator and his original master.

259 N.C. at 28-29, 129 S.E. 2d at 618-19. *See also Moody v. Kersey;* 1C A. Larson, *supra,* at § 48.30. In the case at bar, we find Thompson to be the agent of Owsley as a matter of law. Having found agency, we now address the negligence issue.

NEGLIGENCE

[2] To withstand the motion for a directed verdict on the negligence issue, plaintiff's evidence, when taken in the light most favorable to him, must show (1) a failure on the part of Owsley to exercise proper care in the performance of a legal duty which Owsley owed the plaintiff, and (2) that such negligent breach of duty was a proximate cause of plaintiff's injury. *See Moody v. Kersey.*

Owsley contends that the spreader bar which fell on the plaintiff was not part of the crane; that neither Owsley nor Thompson owned or maintained the spreader bar; that the crane, itself, did not cause the injuries; that the crane was turned off at the time plaintiff was injured; and that Thompson was not at or near the crane at the time plaintiff was injured. Based on these contentions, we are not persuaded that Owsley is entitled to a directed verdict. Owsley's agent, Thompson, clearly had a duty to exercise a degree of care commensurate with the dangerous character of the job being performed. "Negligence is the failure to exercise that degree of care for others' safety which a reasonably prudent man under like circumstances would exercise." *Moody v. Kersey,* 270 N.C. at 619, 155 S.E. 2d at 219. Significantly, Owsley admitted that its operators (including Thompson) were "expert in the performance of their duties in the operations of cranes." Due to the extremely dangerous nature of the job being performed, Thompson is held to high degree of care in taking all necessary steps to avoid injury to those working around him. Again, *Moody*

*v. Kersey* is instructive: "[A person] in control of machinery being used in a hazardous operation . . . was obliged to exercise a degree of care commensurate with the dangerous character of the operation." 270 N.C. at 620, 155 S.E. 2d at 220.

The plaintiff put on ample evidence from which the jury could have found that Owsley's agent negligently failed to take the slack out of the cables, allowing one of the spreader bars to be balanced precariously and to fall on the plaintiff. Simply put, the jury could have found that if the slack had been taken out — if the cables had been taut — the spreader bar would not have fallen.[5]

CONTRIBUTORY NEGLIGENCE

[3] Citing the often-quoted rule set forth in *Presnell v. Payne*, 272 N.C. 11, 13, 157 S.E. 2d 601, 602 (1967) — "one who has capacity to understand and avoid a known danger and fails to take advantage of that opportunity, and injury results, . . . is chargeable with contributory negligence which will bar recovery" — and setting forth every reasonable inference tending to support its position, Owsley claims plaintiff was contributorily negligent as a matter of law. Again, we are not persuaded; the case law simply will not support Owsley's position. The plaintiff's evidence indicated that he was unable to determine from his location how much slack there was in the cables and that he was unable to determine by observation how precariously balanced the spreader bar was on the panel. Moreover, the plaintiff did nothing to contribute to Owsley's agent leaving excessive slack in the cables. All contradictions, discrepancies or contra-inferences should be resolved by the jury. In order for a directed verdict to be granted for Owsley on the grounds of contributory negligence, it is required that the plaintiff establish his own negligence so clearly by his own evidence that no other reasonable inference or conclusion can be drawn therefrom. *Clark v. Bodycombe*, 289 N.C. 246, 221 S.E. 2d 506 (1976). At the very least, there is an inference that plaintiff was in no position fully to appreciate his own peril.

---

5. Had the answers to interrogatories 5, 6 and 9 been admitted, the case for the plaintiff would have been substantially strengthened. In those answers, Owsley admitted that "the modified and changed spreader bar was used in a dangerous condition." We discuss the court's decision to exclude answers to these interrogatories in Part II, *infra.*

[C]onduct [of the plaintiff] on this occasion "must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves."

*Clark v. Roberts,* 263 N.C. 336, 343, 139 S.E. 2d 593, 597 (1965).

In this case, we find no negligence on the part of the plaintiff which contributed to his injury as a matter of law. Plaintiff was standing where he had a right to be and, in fact, needed to stand in order to perform the duties which Owsley knew the plaintiff had to perform.

## II

[4] In addition to denying its negligence and alleging plaintiff's contributory negligence, Owsley alleged in its Answer that Kaiser's negligence was the sole and proximate cause of plaintiff's injury. On the same day Owsley filed its Answer, it also filed a third-party complaint against Kaiser specifically alleging, among other things, that Kaiser used a properly designed spreader bar in an improper manner knowing that the spreader bar could or would endanger, or was likely to endanger, the plaintiff. Kaiser filed a reply to the third-party complaint, specifically moving to strike the averments of negligence. Contemporaneously with its reply, Kaiser filed its first set of interrogatories to Owsley, asking in paragraphs 5, 6 and 9 that Owsley "state specifically each respect in which" Owsley contends Kaiser was negligent. Owsley's combined answer to interrogatories 5 and 6 and its answer to interrogatory 9 follow:

5. 6. Kaiser modified, disassembled and changed a properly designed and safe spreader bar so that the *modified and changed spreader bar was used in a dangerous condition* and thereafter ordered and directed the plaintiff to work in the area of the *improperly used spreader bar* and failed to adequately instruct the plaintiff of the dangerous condition and position of the improperly used spreader bar at the time the plaintiff sustained his injuries and further *failed to adequate-*

Beatty v. Owsley & Sons, Inc.

*ly secure the spreader bar in order that it could not drop or fall on the plaintiff* or otherwise injure the plaintiff and further directed the plaintiff to go from a place of safety to a place of danger, to-wit, *where the improperly used spreader bar* was located and further forgot an essential tool of use in handling the panels and therefore had to send the plaintiff to the area of and under the *improperly used spreader bar.* (Emphasis added.)

9. Kaiser had disassembled and modified the original spreader bar as designed and manufactured by the defendant and third-party plaintiff and as originally sold to and purchased by Condec, by deleting all cross bars or cross braces and further directed and ordered said spreader bars to be left without support in a precarious position on the panel, unattended.

At trial, plaintiff contended (1) that Owsley's agent was negligent in failing to take the slack out of the cables, and (2) that Owsley's agent was negligent in failing to inform Kaiser that the removal of the "cross bars or cross braces" left the spreader bars without support and made them inherently dangerous. Consequently, plaintiff sought to introduce into evidence Owsley's answers to interrogatories 5, 6 and 9.[6]

Plaintiff's first assignment of error is that the trial court erred in excluding from evidence Owsley's answers to interrogatories 5, 6 and 9. The admission of these answers is governed by Rule 33(b) of the North Carolina Rules of Civil Procedure:

[b] Scope; Use at Trial. Interrogatories may relate to any matters which can be inquired into under Rule 26(b), and the answers may be used to the extent permitted by the rules of evidence.

An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory in-

---

6. Owsley objected to the tender. Owsley argued in its brief that "the questions and answers were tantamount to allegations on issues raised on the pleadings between the third-party plaintiff and the third-party defendant, which case had been totally severed from this proceeding and [that] allegations and conclusions of law and fact could not be construed as being substantive evidence in the case at bar."

volves an opinion or contention that relates to fact or the application of law to fact, . . .

We agree with the plaintiff that the answers to interrogatories should not have been excluded, although we reach our conclusion on a different basis from that assigned by plaintiff.[7] Plaintiff was seeking "to charge [Owsley] with knowledge or notice of the facts declared" — for example, the inherently dangerous condition of spreader bars without supporting cross braces — "or to show that [Owsley, as an expert] believed them to be true" and failed to act. 2 Stansbury, N.C. Evidence 2d, § 167 (Brandis revision 1973). Plaintiff was not, in this case, seeking to prove that Kaiser was negligent. If statements are offered, as were statements in this case, for any purpose other than to prove the truth of the matter asserted, they are not objectionable as hearsay.[8] 1 Stansbury, *supra*, at § 138.

The order granting defendant Owsley's motion for directed verdict is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Judge MARTIN (Robert M.) and Judge WHICHARD concur.

---

7. Plaintiff argues, based on Rule 33(b) of the Federal Rules of Civil Procedure and on the Federal Rules of Evidence, that although "answers to interrogatories are hearsay and inadmissible at the trial unless they fall within some recognized exception to the hearsay rule, the answers "are admissible under the exception to the hearsay rule of 'an admission of the party opponent'." We note that under Federal Rule of Evidence 801, a statement is *not* hearsay if it is an admission by a party-opponent.

8. "As to admissions by an individual party himself, whether they should be classified as non-hearsay or as hearsay exceptionally admissible seems to the present writer to be an ultimately profitless, if intellectually stimulating, debate. A court is likely to admit the same evidence, whatever its theory may be." 2 Stansbury, *supra*, at § 167n.14.