**Mary GOHEEN, Plaintiff–Appellant,**

v.

**YELLOW FREIGHT SYSTEMS, Defendant–Appellee.**

**No. 93–4108.**

United States Court of Appeals, Tenth Circuit.

Aug. 16, 1994.

Roger D. Sandack, Salt Lake City, UT, for plaintiff-appellant.

John R. Lund of Snow, Christensen & Martineau, Salt Lake City, UT, for defendant-appellee.

Before MOORE and SETH, Circuit Judges, and DAUGHERTY, District Judge.*

DAUGHERTY, District Judge.

This is an appeal from an order of the district court granting summary judgment for the Defendant–Appellee Yellow Freight Systems, holding that its employee became a fellow servant of the Plaintiff–Appellant and Plaintiff–Appellant was thus barred from maintaining a third-party tort action against

---

* The Honorable Fred Daugherty, Senior United States District Judge for the Western, Eastern and Northern Districts of Oklahoma, sitting by designation.

the Defendant–Appellee by reason of the exclusive remedy provisions of Utah's workers compensation laws, Utah Code Ann. § 35–1–60. We review the grant or denial of summary judgment *de novo*. *Barnson v. United States*, 816 F.2d 549, 552 (10th Cir.1987), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987). We apply the same legal standard used by the district court and examine the record to determine if any genuine issue of material facts is in dispute; if not, we determine if the substantive law was correctly applied. *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238 (10th Cir.1990).

The Appellant Mary Goheen was employed as a receiving clerk at Electro Controls, Inc. in Salt Lake City, Utah. On the day of Ms. Goheen's accident, May 23, 1988, she was working on the loading dock at Electro Controls. A driver for Yellow Freight Systems arrived at the loading dock to deliver a crate containing an Electro Controls product. As such receiving clerk, Appellant Goheen was to inspect the shipment and unload the crate. When Goheen observed the position of the crate on the back of the truck, she determined that the crate was positioned so that there was insufficient room to safely place her pallet jack underneath the crate and remove the crate from the truck. She informed the Yellow Freight driver that he could either reload the crate on the truck so as to make it safe for unloading or unload the crate himself. The driver chose to unload the crate himself with Ms. Goheen assisting. While both parties were in the truck, the driver put the pallet jack under the crate and began to raise the jack while Goheen pushed the crate from behind. As the driver pulled the crate from the truck, the crate became unstable and fell off the pallet jack, injuring Goheen.

At the time of Appellant Goheen's accident, Yellow Freight Systems, Inc. was operating as a common carrier under the authority of the Interstate Commerce Commission and the tariffs issued by that Commission. The relevant tariff [1] concerns the loading and unloading of heavy or bulky freight and provides that the consignee is responsible for the unloading of freight weighing 500 or more pounds. The crate involved in the case at bar weighed over 2,000 pounds.

■ On the basis of the foregoing undisputed facts and pertinent regulations, the district court found that the Yellow Freight driver became a fellow servant of Appellant Goheen as a loaned servant of her employer, thus prohibiting Goheen from proceeding against the Defendant as the employer of her loaned or fellow servant and limiting her recovery to the Utah worker's compensation laws.[2] We agree and affirm.

■ The rights of consignor and consignee with respect to the shipment of goods are a matter of federal law. 49 U.S.C. § 11707(a)(1); *Rio Grande Motor Way v. Resort Graphics*, 740 P.2d 517 (Colo.1987); *Hiram Walker & Sons, Inc. v. Kirk Line*, 877 F.2d 1508 (11th Cir.1989). As a result, the duties of the parties in the case at bar regarding the unloading of the crate are

1. Tariff ICC YFSY 115 states in pertinent part that:
   When in freight (per package or piece) in a single container, or secured to pallets, platforms or lift truck skids, or in any other authorized form of shipment ... (c) weighs 500 pounds or more:
   The consignor will perform the loading and the consignee will perform the unloading. On request of consignor or consignee, the truck driver will assist the consignor or the consignee in loading or unloading....

2. Utah Code Ann. § 35–1–60 provides that:
   The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer, and the liabilities of the employer imposed by this Act shall be in place of any and all other civil liabilities whatsoever, at common law or otherwise, to such employee or to his spouse, widow, children, parents, dependents, next-of-kin, heirs, personal representatives, guardian, or any other person whomsoever, on account of any accident or injury or death, in any way contracted, sustained, aggravated or incurred by such employee in the course of or because of or arising out of his employment, and no action at law may be maintained against an employer or against any officer, agent or employee of the employer based upon any accident, injury or death of an employee.

circumscribed by the tariff ICC YFSY 115. *Cloughley v. Orange Transportation Co.*, 80 Idaho 226, 327 P.2d 369 (1958). The Appellant's employer, Electro Controls, was responsible for the unloading of the crate as consignee and thus Goheen, as a representative of Electro Controls, was in charge and had control of the unloading. This "right to control is the paramount consideration" in determining whether the loaned servant doctrine is applicable, *Bambrough v. Bethers*, 552 P.2d 1286, 1292 (Utah 1976), and would result in the Yellow Freight driver becoming a loaned servant of Goheen's employer and thus a co-employee of Goheen upon her requesting his assistance in the unloading. *Peterson v. Fowler*, 27 Utah 2d 159, 493 P.2d 997 (1972); *Pinter Construction Co. v. Frisby*, 678 P.2d 305 (Utah 1984). In addition, the undisputed facts of the case indicate that Appellant Goheen participated with the Yellow Freight driver in the unloading of the crate so as to establish a fellow servant relationship between the Appellant and the driver as found by the district court. *Peterson v. Fowler*, 27 Utah 2d 159, 493 P.2d 997 (1972).

Utah law recognizes the doctrine of fellow or loaned servant. The Utah Supreme Court defined "fellow servants" as individuals

> engaged in the same line of work and labor together in such personal relations that they can exercise an influence upon each other promotive of proper caution in respect of their mutual safety. They should be at the time of the injury directly operating with each other in the particular business at hand, or they must be operating so that mutual duties bring them into such co-association that they may exercise an influence upon each other to use proper caution and be so situated in their labor to some extent as to be able to supervise and watch the conduct of each other as to skill, diligence and carefulness.

**3.** Utah Code Ann. § 35–1–42 deals with the definition of "employers" for purposes of worker's compensation laws. In pertinent part, the statute provides that:

> If any person who is an employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervi-

*Peterson v. Fowler*, 27 Utah 2d 159, 493 P.2d 997, 1000 (1972); *in accord, Bambrough v. Bethers*, 552 P.2d 1286 (Utah 1976).

In *Bambrough*, the Supreme Court of Utah, in applying the loaned servant doctrine, stated that "[i]t has never been held by this Court that for the loaned servant doctrine to apply, the original employer must completely surrender all control over his loaned employee." *Bambrough*, 552 P.2d at 1292.

If such a relationship was found to exist, an injured co-employee was required to accept only workmen's compensation for his injuries and could not maintain an action against either his own actual employer or the employer of his fellow or loaned servant for negligence in causing his injuries. *Bambrough v. Bethers*, 552 P.2d at 1289. The Appellant, however, urges that the loaned servant doctrine of Utah has been abrogated by the 1975 amendments to the Utah Worker's Compensation laws.

The statute in question, Utah Code Ann. § 35–1–62, as amended, states in pertinent part as follows:

> When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of said employer, the injured employee, or in case of death his dependents, may claim compensation and the injured employee or his heirs or personal representative may also have an action for damages against such third person.…

> For the purposes of this section and notwithstanding the provisions of Section 35–1–42,[3] the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee/employer relationship with the injured or de-

> sion or control, and this work is a part or process in the trade or business of the employer, the contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of the subcontractors, are considered employees of the original employer.

ceased employee at the time of his injury or death.

Prior to the 1975 statutory amendments, Section 35–1–62 referred to "another person not in the same employment" rather than "a person other than an employer, officer, agent or employee of said employer." The paragraph concerning Section 35–1–42 which provides for a suit by an injured employee against certain parties such as subcontractors, was also added by the 1975 amendments.

The Utah Supreme Court addressed the amendments to Section 35–1–62 in the case of *Pate v. Marathon Steel Company*, 777 P.2d 428 (Utah 1989). The Court stated that prior judicial interpretations of Section 35–1–62 had construed the "same employment" language broadly to include statutory employers, such as contractors and subcontractors, thus granting those statutory employers immunity from suit under Section 35–1–60 of the Utah Workmen's Compensation laws. The Court found that, as a result of the 1975 amendments, the Utah legislature "has in clear and unmistakable language evinced an intention to allow suits by an injured worker against those persons who might be his or her statutory employer as defined in Section 35–1–42." *Pate*, 777 P.2d at 431. *See also*, *Shupe v. Wasatch Electric Co., Inc.*, 546 P.2d 896 (Utah 1976); *Bosch v. Busch Development, Inc.*, 777 P.2d 431 (Utah 1989); *Lamb v. W–Energy, Inc.*, 884 F.2d 1349 (10th Cir. 1989).

The Appellant asserts that the rationale of the Utah Supreme Court in the *Pate* case should be applied in the case at bar to allow her cause of action against Yellow Freight Systems. The Appellant contends that because the Utah legislature eliminated worker's compensation immunity for statutory employers as defined in Section 35–1–42, immunity for an employer of a loaned servant would necessarily be abrogated as well.

We believe Appellant Goheen's interpretation of the 1975 amendments to the Utah statutes is overly broad and does not comport with the wording of the statutory provisions at issue. The changes effected by the 1975 amendments to Section 35–1–62 relate specifically and exclusively to an employment situation involving statutory employers as defined in Section 35–1–42. Nothing in the language of Section 35–1–62 indicates that the Utah legislature intended to eliminate the recognized Utah loaned servant doctrine as applied in the case at bar. Had the Utah legislature intended to abolish the recognized Utah fellow servant or loaned servant doctrine in the workmen's compensation arena, it certainly could have done so.[4]

It is well established that the starting point for statutory interpretation is the language of the statute itself. *O'Connor v. U.S. Department of Energy*, 942 F.2d 771, 773 (10th Cir.1991); *Wilson v. Stocker*, 819 F.2d 943, 948 (10th Cir.1987). "When the language of the statute is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances. [citations omitted] A court should venture into the thicket of legislative history only when necessary to determine 'a statutory purpose obscured by ambiguity.'" *O'Connor*, 942 F.2d at 773, citing *Burlington Northern RR Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987).

■ Given the clear language of the 1975 amendments put in issue in the case at bar, there is no need for this Court to engage in an analysis of the legislative history of the statute in order that the meaning might be discerned. The language chosen by the Utah legislature is clear and unambiguous and limits the abrogation of immunity to statutory employers and not loaned servants. Nothing in the language of the statute indicates that the recognized Utah loaned servant doctrine is no longer applicable for purposes of worker's compensation immunity in Utah. The district court correctly determined that there were no disputed material facts about Plaintiff requesting the truck driver to unload or assist in unloading the crate involved. The

---

4. The case of *Stacy v. Bill Hodges Truck Co., Inc.*, 809 P.2d 1313 (Okla.1991), relied on by the Appellant, is inapposite, for the reason that the Oklahoma statute at issue in that case specifically addressed the loaned servant situation, and specifically provided that immunity from suit should not be extended to such a case.

**1454**

district court correctly determined the application of the ICC tariff and the Utah loaned servant doctrine to this case. The judgment of the district court is affirmed.