**Fredrick R. KUNZ, Plaintiff and Appellant,**

v.

**BENEFICIAL TEMPORARIES, Defendant and Appellee.**

No. 940210.

Supreme Court of Utah.

July 26, 1996.

James D. Vilos, Eugene C. Miller, Salt Lake City, for plaintiff.

Scott W. Christensen, Jaryl L. Rencher, Salt Lake City, for defendant.

STEWART, Associate Chief Justice:

Fredrick R. Kunz appeals a district court's grant of summary judgment dismissing his personal injury action against defendant Beneficial Temporaries, a temporary labor broker. Kunz alleged that Beneficial was liable for an injury caused him by Brian Aiken, a temporary employee whom Beneficial had provided to Kunz's employer, Anderson Lumber. Kunz brought his action

against Beneficial under both contract and tort theories. His breach of contract claim asserted that he was a third-party beneficiary of the contract between Beneficial and Anderson Lumber. His tort claim asserted that Beneficial was vicariously liable for Aiken's acts under a theory of respondeat superior. The trial court rejected both claims. Kunz appeals only the vicarious liability ruling. We reverse and remand for determination of whether Beneficial is vicariously liable under the doctrine of respondeat superior.

All pertinent facts are either undisputed or related in the light most favorable to Kunz because his claim was dismissed on summary judgment. *White v. Deseelhorst,* 879 P.2d 1371, 1373 (Utah 1994). We review the trial court's decision for correctness, according the trial court's legal conclusions on the motion for summary judgment no deference. *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993).

Beneficial Temporaries hired Aiken and supplied him to Anderson Lumber as a temporary employee. While working at Anderson Lumber on April 1, 1991, Aiken removed a sliding glass door from its track to repair the bearings. Aiken left the door propped against a wall when he was instructed to help customers in the lumber yard. During Aiken's absence, a gust of wind blew the door over, and it struck and injured Kunz, a regular Anderson Lumber employee.

Kunz obtained a workers' compensation award from Anderson Lumber's insurance carrier. Kunz also filed a common law tort claim against Beneficial, alleging that Beneficial was vicariously liable for Aiken's allegedly negligent act of leaving the door propped against the wall. Beneficial moved for summary judgment on the ground that it was immune from a tort claim under the exclusive remedy provision of the Workers' Compensation Act. *See* Utah Code Ann. § 35–1–60 (1988). The district court ruled that because Aiken was a co-employee of Kunz and therefore immune from a tort action, Beneficial, Aiken's general employer, was also immune.

Kunz asserts on this appeal that Beneficial is not Kunz's "employer" within the meaning of that term in Utah Code Ann. § 35–1–60 and therefore is not entitled to immunity under the exclusive remedy provision of the Utah Workers' Compensation Act. Beneficial, on the other hand, contends that because its loaned employee, Aiken, was immune from suit as a co-employee of Kunz, Beneficial must be derivatively immune because its own liability under respondeat superior is premised on Aiken's liability. In addition, Beneficial argues that, even if it is not derivatively immune under the exclusive remedy provision of the Act it cannot be held vicariously liable because Anderson Lumber had assumed sole responsibility for directing and controlling Aiken's work and therefore was solely liable for any torts Aiken committed within the course of his employment.

In addressing these arguments, we turn first to the Workers' Compensation Act's exclusive remedy provision, which at the time of Kunz's injury provided:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, *shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise,* to such employee or to his spouse, widow, children, parents, dependents, next of kin, heirs, personal representatives, guardian, or any other person whomsoever, on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by such employee in the course of or because of or arising out of his employment, and *no action at law may be maintained against an employer or against any officer, agent or employee of the employer based upon any accident, injury or death of an employee.*

Utah Code Ann. § 35–1–60 (1988) (emphasis added).

In *Ghersi v. Salazar,* 883 P.2d 1352, 1356 (Utah 1994), we observed that the "loaned employee" doctrine guides the application of the exclusive remedy provision in cases where a labor broker provides a tempo-

rary worker to another employer.[1] Under the loaned employee doctrine, Aiken had two employers. His "general" employer was Beneficial, and Anderson Lumber was his "special" employer. As a result, both Aiken and Kunz were co-workers who were under the control and supervision of a common employer, Anderson Lumber. Kunz, however, had no employment relationship with Beneficial. He thus relies on the provision in the Workers' Compensation Act which expressly reserves to an injured employee the right to bring an action for common law damages against persons other than his employer:

When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect *of a person other than an employer, officer, agent, or employee of said employer,* the injured employee, or in case of death, his dependents, may claim compensation and the injured employee or his heirs or personal representative may also

have an action for damages against such third person.

Utah Code Ann. § 35–1–62 (1988) (emphasis added); *see also Hunsaker v. State,* 870 P.2d 893, 899 (Utah 1993).

■ The Workers' Compensation Act is predicated entirely on the status of an employment relationship rather than on fault. This focus on status rather than on fault, which is generally the basis of liability in tort law, sometimes produces results which may appear unfair or anomalous.[2] Nevertheless, in the employment context, the legislature has made a clear policy choice on this matter. It has provided an insurance system in lieu of common law remedies. Those parties who are not part of the employment relationship do not participate in the benefits or burdens of this system; nor are they restricted or protected by its limitations on liability.

■ Consequently, Beneficial's assertion that it is entitled to tort immunity because of Aiken's tort immunity from actions by co-

---

1. That doctrine was borrowed from 1B Arthur Larson, *Larson's Workmen's Compensation* (1995), and it employs a standard containing three factors. If

> (a) the employee has made a contract of hire, express or implied, with the special employer;
> (b) the work being done is essentially that of the special employer; and
> (c) the special employer has the right to control the details of the work,

then the special employer is entitled to the protection of the exclusive remedy provision. *Id.* § 48; *Ghersi,* 883 P.2d at 1356–57. It appears that agencies whose business consists of hiring employees and providing them to other employers on a temporary basis are becoming increasingly important players in the modern employment market. Under Larson's analysis, the temporary agency is referred to as the "general" employer and the client employer to whom the temporary employee is sent is referred to as the "special" employer. In *Ghersi,* the plaintiff was a temporary employee who was injured while working for the defendant (his special employer) by a regular employee of the defendant. Because we found that at the time of his injury, the plaintiff was the defendant's employee and that the person who injured him was a co-employee, we held that his sole remedy was the compensation provided by the Workers' Compensation Act. *Id.* at 1357–58.

2. In this regard, Chief Justice Zimmerman's concurring opinion overstates the implications of

our holding. In the first place, even he concedes that it is "highly implausible" that Beneficial will incur liability under the respondeat superior criteria outlined by our opinion. Because respondeat superior liability will attach only to genuine joint employment situations, the detrimental results forecast by Chief Justice Zimmerman will not occur so long as general employers can demonstrate that they are not joint employers. Moreover, the "anomalies" he identifies are merely the inevitable impacts of a mandatory, no-fault, relationship-based insurance system within the larger context of a fault-based common law legal structure. Yet, Chief Justice Zimmerman apparently suggests that the Legislature should abandon the employment relationship requirement as a prerequisite for asserting the defense of the exclusive remedy provision. Such an amendment would produce far more anomalous jurisprudence than that about which he now complains because application of the remedy provided by the Act would become doctrinally divorced from the protection of the exclusive remedy provision. The entire policy theory underlying the Act would be called into question, and it would be difficult, if not impossible, to identify what rationale, if any, governed the scope of the exclusive remedy provision. It is therefore critical to understand that even though the exclusive remedy provision of the Workers' Compensation Act bars Kunz's action against Anderson, it has nothing to do with his suit against Beneficial. Regardless of the potential for "anomalous" results, the Workers' Compensation Act is simply irrelevant to the question.

workers of his special employer is incorrect. The statutory provision that precludes a co-worker's common law tort action against Aiken does not affect the vicarious liability premise upon which Kunz relies for bringing his action against Beneficial. That point is also recognized by the Second Restatement of Agency, which addresses the general issue of the effect of employee immunity on the liability of an employer:

> In an action against a principal based on the conduct of a servant in the course of employment:
>
> .    .    .    .    .
>
> (b) The principal has no defense because of the fact that:
>
> .    .    .    .    .
>
> (ii) the agent had an immunity from civil liability as to the act.

Restatement (Second) of Agency § 217 (1958); *see also Marsh v. Tilley Steel Co.*, 606 P.2d 355, 361 (Cal.1980). Therefore, even though Aiken, Beneficial's "loaned" employee, is immune from suit by Kunz because both are employees of Anderson Lumber, the Act does not bar Kunz's action against Beneficial.[3]

■ Nevertheless, it does not necessarily follow that Beneficial is vicariously liable for Aiken's purported negligence. Even as-

suming that Aiken was negligent, Beneficial's vicarious liability for that negligence depends upon whether there was a respondeat superior relationship between Beneficial and Aiken. If Beneficial were Aiken's regular employer, it would ordinarily be vicariously liable for any negligent act Aiken performed within the scope of his employment. *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056–57 (Utah 1989). In the loaned employee context, where a general employer loans one of its employees to another employer, a new, albeit temporary, employment relationship is formed. The employer of the loaned employee, or special employer, is liable to a third party for torts committed by the loaned employee within the scope of his or her employment with the special employer.[4] *See* Restatement (Second) of Agency § 227 (1958).

■ The question we face in this case, however, is whether the general employer retains any vicarious liability for the torts of a temporary employee who is working for a special employer. That inquiry is a matter of first impression in Utah. In those states that have addressed the question, the vast majority have held that, as long as the general employer relinquishes control over the loaned employee, the general employer's vicarious liability is suspended and is trans-

---

3. As a result, this case is factually distinct from *Bambrough v. Bethers*, 552 P.2d 1286, 1289–90 (Utah 1976). In that case Bambrough's employer contracted with Bethers to haul a load of wood paneling. When Bambrough arrived, he was asked to assist in loading the paneling and, in the process, was injured by one of Bethers' employees. The trial court found that Bambrough had temporarily become a loaned employee. *Id.* at 1291–92. Hence, at the time of the accident Bambrough and Bethers had assumed an employer-employee relationship, and the exclusive remedy provision precluded his negligence suit against Bethers and Bethers' employees. *Id.* In this regard, the Tenth Circuit's interpretation of Utah's Workers' Compensation Act in *Goheen v. Yellow Freight Systems*, 32 F.3d 1450, 1452–54 (10th Cir.1994), misapprehended the issue and consequently misapplied Utah law. *Goheen* apparently assumed that in a loaned employee context, *Bambrough* precluded a suit against *either* employer by *any* co-worker. *Id.* at 1452. *Goheen*'s analysis failed to recognize that the loaned employee and the regular employee stand in dramatically

different postures with respect to the two employers. With respect to the scenario found in *Goheen* and in Kunz's case, the loaned employee has an employment relationship with both the "loaning" (or general) employer and the "borrowing" (or special) employer (which precludes the loaned employee's common law tort action against either employer), whereas the regular employee maintains an employment relationship only with his or her regular employer (which precludes only the regular employee's common law tort action against the regular employer).

4. If one of its own employees suffers an injury, Anderson Lumber is of course immune under the exclusive remedy provision of the Workers' Compensation Act. This statutory preclusion of common law liability does not, however, alter the process for determining vicarious responsibility for the torts of loaned employees. If Aiken had injured a third party not associated with either employer, the same analysis would apply, but due to the absence of statutory immunity, that third party could sue Anderson Lumber.

ferred to the special employer.[5] We likewise hold that in certain circumstances, the general employer should not be subject to vicarious liability for the torts of a loaned employee.[6]

The specific criteria for determining when liability is transferred from a general to a special employer tend to vary from jurisdiction to jurisdiction. Generally speaking, there are two standards upon which courts have relied: (1) the "right of control" test, and (2) the "whose business" test. *See, e.g., Haight v. Aldridge Elec. Co.,* 215 Ill.App.3d 353, 159 Ill.Dec. 14, 23, 575 N.E.2d 243, 252 (1991) (right of control); *May v. Harper Hosp.,* 185 Mich.App. 548, 462 N.W.2d 754, 756–57 (1990) (same); *Brickner v. Normandy Osteopathic Hosp. Inc.,* 746 S.W.2d 108, 112 (Mo.Ct.App.1988) (same); *Progressive Constr. & Eng'g Co. v. Indiana & Mich. Elec. Co.,* 533 N.E.2d 1279, 1284–85 (Ind.Ct. App.1989) (whose business); *Lattea v. City of Akron,* 9 Ohio App.3d 118, 458 N.E.2d 868, 875–76 (1982) (same). The first seeks to determine the degree of supervisory respon-

sibility held by the employer, and the second seeks to determine whose business was being furthered by the employee's activities. These tests, however, are not mutually exclusive. In fact, they will often overlap because an employer's right to control is generally coextensive with the scope of the business itself. In any event, both are relevant in a respondeat superior context.

The doctrine of respondeat superior is premised upon "enterprise" liability. It seeks to place the burden of risk for the torts of employees "which as a practical matter are sure to occur in the conduct of the employer's enterprise ... upon that enterprise itself, as a required cost of doing business." *Prosser and Keeton on the Law of Torts,* § 69, at 500 (5th ed. 1984). In this respect, the "whose business" test determines which enterprise is most closely connected to the employee's work,[7] and the "right to control" test simply applies the traditional agency principle that the master answers for the acts of the servant (and, as a matter of policy, encourages the employer with pri-

---

**5.** *See Kastner v. Toombs,* 611 P.2d 62, 63–64 (Alaska 1980); *Societa per Azioni v. City of Los Angeles,* 645 P.2d 102, 107 (Cal.1982); *Marsh v. Tilley Steel Co.,* 606 P.2d 355, 358–59 (Cal.1980); *Haight v. Aldridge Elec. Co.,* 215 Ill.App.3d 353, 159 Ill.Dec. 14, 22–24, 575 N.E.2d 243, 251–53 (1991); *Progressive Constr. & Eng'g Co. v. Indiana & Michigan Elec. Co.,* 533 N.E.2d 1279, 1284–85 (Ind.Ct.App.1989); *May v. Harper Hosp.,* 185 Mich.App. 548, 462 N.W.2d 754, 756–57 (1990); *Brickner v. Normandy Osteopathic Hosp., Inc.,* 746 S.W.2d 108, 112–13 (Mo.Ct.App. 1988); *Los Ranchitos v. Tierra Grande, Inc.,* 116 N.M. 222, 861 P.2d 263, 267 (1993); *Lattea v. City of Akron,* 9 Ohio App.3d 118, 458 N.E.2d 868, 875–76 (1982); *Parks v. Oklahoma City,* 559 P.2d 1266, 1268 (Okla.Ct.App.1976); *Parker v. Vanderbilt Univ.,* 767 S.W.2d 412, 416–17 (Tenn. Ct.App.1988); *Stocker v. Shell Oil Co.,* 105 Wash.2d 546, 716 P.2d 306, 308 (1986) (en banc); *DePratt v. Sergio,* 102 Wis.2d 141, 306 N.W.2d 62, 63–65 (1981). *But see Bright v. Cargill,* 251 Kan. 387, 837 P.2d 348, 365–66 (1992) (upholding jury finding that temporary agency was liable in respondeat superior); *Beatty v. H.B. Owsley & Sons, Inc.,* 53 N.C.App. 178, 280 S.E.2d 484, 487 (1981) (holding general employer crane-leasing company liable for injuries caused by crane operator). Kunz cites two cases, *Marsh,* 606 P.2d at 355–62, and *Kenyon v. Second Precinct Lounge,* 177 Mich.App. 492, 442 N.W.2d 696 (1989), which he asserts have held that a temporary agency always remains liable in respondeat superior for the torts of its temporary

employees. However, those cases merely held, as we do, that a respondeat superior lawsuit against a general employer is not precluded by the exclusive remedy provision of workers' compensation. *Marsh,* 606 P.2d at 360–61; *Kenyon,* 442 N.W.2d at 700–01. Both cases also held that general employers could be relieved of respondeat superior liability so long as they could demonstrate relinquishment of control over the loaned employee. *Marsh,* 606 P.2d at 359; *Kenyon,* 442 N.W.2d at 702.

**6.** We do not address here the entirely distinct question of whether a general employer could be held directly or contractually liable for its negligent provision of an improperly or inadequately trained employee.

**7.** *Marsh* criticized the "whose business" test because it "impl[ied] that only one employer may be simultaneously served." *Marsh,* 606 P.2d at 360 (citing Note, *Borrowed Servants and the Theory of Enterprise Liability,* 76 Yale L.J. 807, 811 (1967)). This implication, however, is by no means inevitable. Courts need only acknowledge the reality that different employers, particularly in the general contractor/subcontractor context, may often be involved in a common endeavor. Thus, to the extent other courts have assumed that the "whose business" test imposes the single employer limitation criticized by *Marsh,* we do not adopt the reasoning of those courts.

mary supervisory responsibility to minimize the opportunity for its employees to commit torts).

As noted in *Ghersi*, similar tests are also utilized in the workers' compensation context as factors determining whether a special employment relationship exists. *Ghersi*, 883 P.2d at 1356–57. This similarity is not surprising because the outcome of both respondeat superior analysis and workers' compensation analysis depends upon the factual nexus connecting an employee to the operations of a particular employer.

The workers' compensation analysis and the respondeat superior analysis, however, have different purposes and therefore differ in one critical aspect with respect to the unique circumstance involving multiple employers. The loaned employee workers' compensation scenario typically requires only a determination of whether there are sufficient links (as those links are defined by the Workers' Compensation Act) between the loaned employee and the special employer to render the special employer immune from suit, whereas a multiple employer respondeat superior scenario requires a separate determination that the general employer retained sufficient links (as those links are defined by respondeat superior jurisprudence) with the employee to justify imposing vicarious liability on the general employer.

Although the questions posed by the two scenarios are very similar in nature, answering the questions posed by one scenario does not necessarily answer those posed by the other. The workers' compensation analysis, for instance, addresses the relative right of control maintained by both general and special employers. It does so, however, in an attempt to determine whether the special employer has assumed sufficient right of control over the loaned employee's activities for workers' compensation purposes, not for the purpose of determining whether and to what degree one employer is liable vis-a-vis the other for the torts of the loaned employee. The possibility that the general employer retained a concurrent right of control for vicarious liability purposes is not excluded simply because the special employer has a right of control for the purposes of the workers' compensation statute. If the general employer retains any meaningful right to supervise the loaned employee with respect to the work being done, then the right of control factor weighs in favor of a finding of liability, whereas relinquishment of the right to supervise militates against it.

The workers' compensation analysis also examines the issue of whether the loaned employee's work is "essentially that of the special employer." Nevertheless, the answer to that question again does not necessarily determine whether and to what extent the general employer and the special employer may have engaged in a shared business endeavor. Answering that question requires an examination of the policy of enterprise liability underlying the doctrine of respondeat superior. If the two employers are engaged in a shared business endeavor and the employee is furthering that endeavor, then the "whose business" factor weighs in favor of a finding of liability. If, on the other hand, the general employer is effectively disconnected from the enterprise for whom the employee is acting, then that factor weighs against a finding of liability.[8] In short, a finding that the general employer retains liability depends upon (1) whether that general employer retained any right to direct, supervise, and control the details of the employee's work, or (2) whether the employee's work was performed in whole or in part in furtherance of that employer's business.[9] If

---

**8.** In this regard, it should be understood that merely because a temporary agency derives an economic benefit from its contractual arrangement to provide laborers to client employers, that benefit alone does not create a shared endeavor. Nor do the types of general contractual limitations commonly imposed by temporary agencies (such as restrictions on the height at which an employee may be required to work and restrictions as to the general nature of the work to be performed, *see Walker v. U.S. General*, 916 P.2d 903, 905 (Utah 1996)), necessarily indicate that the temporary agency has retained a right to control the temporary employee's work.

**9.** This test, of course, merely determines who is potentially liable under respondeat superior. It does not actually establish liability. The question of whether the employee was acting within the scope of his or her employment, as outlined in *Birkner v. Salt Lake County*, 771 P.2d 1053,

the general employer retains any right to control the employee or the employee is furthering the business interests of both employers simultaneously, the general employer retains a share of liability under the respondeat superior doctrine.

■ With respect to the case at hand, the trial court did not address the issue of whether Beneficial retained respondeat superior liability under the tests outlined. In its determination of undisputed facts, the trial court, however, noted certain facts which on the surface appear to be relevant to a ruling on that issue:

> At the time of the injuries to the plaintiff, Mr. Aiken was under the direction and control of Anderson Lumber, and to some minor degree under the control of Beneficial Temporaries.
>
> Anderson Lumber and its employees and agents principally directed the nature and scope of Mr. Aiken's work.

The source of the reference to Beneficial's "minor degree [of] control" is not clear from the balance of the record. Kunz's opposition brief at the trial level and Beneficial's reply brief[10] discussed Beneficial's administrative responsibilities for managing payroll and deductions for its temporaries as well as its ability to reassign them.

However, these elements, in themselves, do not establish that Beneficial maintained a right of control over the details of Aiken's work sufficient to retain vicarious liability for any torts he may have committed while working under Beneficial's supervision.[11]

Moreover, the trial court did not have the opportunity to address the issue of whether Beneficial and Anderson Lumber were engaged in a common business endeavor.[12] Consequently, according to the standard we have laid out in this opinion, the trial court must now determine the question of whether, as a matter of law, Beneficial can be held vicariously liable under the doctrine of respondeat superior.

Reversed and remanded for further proceedings.

DURHAM, J., concurs in Associate Chief Justice STEWART's opinion.

ZIMMERMAN, Chief Justice, concurring in the result:

I concur in the result reached by the lead opinion because I believe it is dictated by the operation of prior case law and existing statutes. But I write separately to comment on the implications of today's decision.

The modern labor market is becoming increasingly reliant on temporary workers who are supplied by labor agencies such as the defendant in the instant case. *See* Jonathan P. Hiatt, *Policy Issues Concerning the Contingent Work Force,* 52 Wash. & Lee L.Rev. 739, 741 & n. 20 (1995) ("[T]emporary work has grown ten times faster than overall employment since 1982."). This trend appears to be reflected across the entire spectrum of occupations and professions. In that context, the result we reach today has substantial potential to undermine the balance struck by

---

1056–58 (Utah 1989), and other relevant cases, must still be addressed.

**10.** Beneficial did not include these facts in its "undisputed facts" section, and Kunz did not provide a facts section. Hence, neither party formally notified the trial court of the facts relevant to the control issue in the respondeat superior context. This is not surprising because the primary focus at the trial court was on the workers' compensation analysis. Because there was ample evidence to establish a special employment relationship in the workers' compensation context, the parties apparently presumed that there was no need to conduct an extensive debate over the degree of control retained by Beneficial.

**11.** Ordinarily, temporary agencies will relinquish all right to control over the specific tasks and

details of a temporary employee's work. This does not mean, however, that such will always be the case.

**12.** At least one court has suggested that the premise of enterprise liability renders temporary agencies liable under respondeat superior because they possess a shared financial interest with their clients in the work performed by temporary employees. *Bright v. Cargill,* 837 P.2d 348, 363–64 (Kan.1992). We disagree with this rationale. If taken to its logical extent, this rationale would virtually always hold a general employer liable for its loaned employees because a shared financial interest will nearly always be present in any business context where one employer allows another to borrow its employees.

the workers' compensation system between when a worker may seek a tort recovery and when the worker is limited to workers' compensation benefits. Today's result also has the potential to sharply limit the growth in the use of temporary workers in Utah.

To explain: After today's decision, Utah law permits a regular employee of a special employer using a loaned employee to obtain not only workers' compensation benefits from the special employer, but also a tort remedy against the general employer of the loaned employee for the negligence of that loaned employee. Yet if the injured employee had been harmed by the negligence of one of his or her employer's regular employees, no such tort recovery would be permitted under the workers' compensation law. Similarly, we have held that the workers' compensation law denies the loaned employee a tort remedy against a special employer for the negligence of its regular employee when the special employer's payment to the general employer includes an amount for workers' compensation coverage. *Ghersi v. Salazar*, 883 P.2d 1352, 1358 (Utah 1994). The result today, though dictated by the current workers' compensation statutes and prior case law, puts the two workers—one loaned and one regular, but both statutory co-employees—on an unequal footing for no discoverable policy reason.

From the employee's perspective, it is anomalous, to say the least, that Kunz, who collected workers' compensation benefits from Anderson Lumber, has a tort remedy against Beneficial when he would have had no such remedy if he had been injured by a regular co-employee of Anderson, and that Aiken, if he had been the one injured, would have been limited to workers' compensation benefits from Beneficial and would have had no tort remedy against anyone. From the employer's perspective, it is also anomalous that special employers are immunized from all but workers' compensation claims, but the financial risk resulting from the availability of tort remedies flowing from a loaned worker's negligence rests on general employers (assuming the various tests for a respondeat superior relationship are satisfied).

Common sense suggests that the existence of these apparently irrational pockets of common law liability are inconsistent with the underlying objectives of Utah's otherwise comprehensive workers' compensation scheme. Common sense also suggests that these pockets of tort liability will become increasingly important to employers and employees as the temporary work force becomes a larger factor in the labor market. The present state of the law can only operate to frustrate the development of the temporary labor market in Utah by making it more costly for suppliers of temporary labor to do business and by discouraging workers from seeking employment with such suppliers. This is an issue the legislature should address, for only it is capable of a systematic approach to these problems.

The lead opinion suggests that I am overly concerned about the real world consequences of today's ruling and seemingly attempts to dissuade the legislature from responding. I am sure the legislature is fully capable of judging the practical impact of today's ruling and the feasibility of a response. I am content to have it do so.

Finally, I wish to address Justice Howe's dissent. I agree with Justice Howe's conclusion that on the basis of the record as it appears today, there is no possibility of finding Beneficial vicariously liable for Aiken's acts. Nonetheless, I agree with the lead opinion that a remand is appropriate because the trial court did not have the opportunity to address this issue, and the record is therefore incomplete. Although it may be highly implausible, it is not inconceivable that the parties may have some evidence to add to the record that is relevant to showing a respondeat superior relationship under our traditional legal tests. Because the parties should be allowed to have this opportunity, a remand is justified.

MEMMOTT, District Judge, concurring in part and concurring in the dissenting opinion of HOWE, Justice:

I concur in the lead opinion that the Workers' Compensation Act does not preclude an employee of a special employer who is injured by a loaned employee from bringing an

action against a general employer. I believe this result is dictated by existing statutes and prior case law. However, I also concur with Justice Howe's dissenting opinion, in which he finds no need to remand this case on the respondeat superior issue. There is no need to remand this case for further district court proceedings. The trial court has made adequate findings, and the record is sufficient. Under either the "whose business" test or the "right of control" test set forth in the lead opinion, Kunz's respondeat superior action against Beneficial would fail.

HOWE, Justice, dissenting:

I express no opinion on the lead opinion's holding that the Workers' Compensation Act does not preclude an employee of a special employer who is injured by a loaned employee from bringing an action against a general employer. I dissent from the balance of the opinion because there is no need to remand this case on the respondeat superior issue.

The lead opinion correctly states that "as long as the general employer relinquishes control over the loaned employee, the general employer's vicarious liability is suspended and is transferred to the special employer." However, the lead opinion concludes that we must remand this case to the trial court for more specific findings on Beneficial's control over Aiken. The record before us sufficiently indicates that under either of the lead opinion's "right of control" or "whose business" test, Beneficial's potential vicarious liability for Aiken's actions had transferred to Anderson Lumber. Therefore, Kunz's respondeat superior action against Beneficial must fail.

The trial court made the following undisputed findings of fact:

3. The alleged tort-feasor, *Mr. Aiken, was working* as a co-employee with the plaintiff *under the control of plaintiff's employer, Anderson Lumber.*

4. The defendant, Beneficial Temporaries, had provided Mr. Aiken to Anderson Lumber as a temporary employee.

5. At the time of the injuries to the plaintiff, *Mr. Aiken was under the direction and control of Anderson Lumber,* and to some minor degree under the control of Beneficial Temporaries.

6. *Anderson Lumber and its employees and agents principally directed the nature and scope of Mr. Aiken's work.*

(Emphasis added.)

Clearly Aiken was not under Beneficial's "right of control" at the time of the accident. The record indicates that the only services provided by Beneficial consisted of paying Aiken and covering his payroll taxes, workers' compensation premiums, and unemployment taxes. We have held that a temporary labor service "does not perform any work for customers; it merely supplies or 'loans' workers who are under contract to the service to work as an employee for a client. The work the employee performs is the work of the client." *Ghersi v. Salazar,* 883 P.2d 1352, 1356 (Utah 1994). Only Anderson directed, supervised, and controlled Aiken's work for Anderson. Certainly Beneficial was not in a position to foresee, avoid, or remedy any dangerous condition—one of the primary policies behind respondeat superior liability.

Applying the "whose business" test, the record is clear that Aiken was primarily furthering Anderson's activities at the time of the accident. Upon assignment and arrival at work, Aiken essentially became Anderson's employee and performed work requested by Anderson. There is no hint that Beneficial and Anderson were in a common business endeavor or that Beneficial had supervisors at the site.

The record before us is sufficient. Kunz's respondeat superior action against Beneficial must fail.

RUSSON, J., having disqualified himself, does not participate herein; District Judge JON M. MEMMOTT sat.